UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ERIC S. SMITHSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-360-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| AETNA LIFE INS. CO., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff/Counterclaim Defendant Eric S. Smithson's motion to dismiss Defendant Aetna Life Insurance Company's ("Aetna") counterclaim. [Record No. 12] Smithson argues that Aetna's counterclaim should be dismissed in its entirety pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for failure to state a claim and because this Court lacks subject matter jurisdiction. Alternatively, he asks the Court strike the counterclaim pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to the extent it seeks legal remedies. For the reasons discussed below, Smithson's motion will be denied in its entirety.

**I.**

This matter arises from Smithson's claim for disability benefits. Smithson was a participant in a Long Term Disability Plan ( "Plan") with his former employer, United Parcel Service ("UPS"). [Record No. 1-1, p. 1] The Plan was funded by a group policy ("the Policy")

issued to UPS by Aetna. [*Id.*] The Policy constitutes an employee welfare benefit plan under the Employee Retirement Income Security Act ("ERISA").

The Plan provides disability benefits for employees who meet the contractual provisions of the Policy, including its definition of disability. [*Id.*, p. 4] However, the Policy also requires a beneficiary to apply for disability income benefits from other sources, if eligible, and states that any "Other Income Benefits" (including Social Security benefits, workers' compensation, and pension benefits) received by the beneficiary will offset the beneficiary's long-term disability benefits.[1] [Record No. 18-2, pp. 83-84] The Policy further requires a beneficiary to repay to the Plan any overpayment of long-term disability benefits. [*Id.*]

Smithson received monthly long-term disability benefits for twenty-four months under the Policy. [Record No. 1-1, p. 6] However, on September 6, 2012, Aetna notified Smithson that his benefits would end on September 19, 2012. [*Id.*] On March 8, 2013, Smithson was approved for Social Security Disability benefits. Five days later, he received notice that he had been approved to receive disability benefit payments under an employee pension plan.[2] [*Id.*] Smithson alleges that Aetna breached the Policy when it denied his request for long-term disability benefits after September 19, 2012. [Record No. 1-1, p. 1]

---

1   Smithson also signed a reimbursement agreement which is considered part of the Policy. *See Unum Life Ins. Co. of Am. v. Miller*, No. 2:11-129-DCR, 2012 U.S. Dist. LEXIS 105579, at *5-6 (E.D. Ky. July 30, 2012) (where reimbursement agreements are specifically referenced in a plan's policy, they are part of the policy and its administration.).

2   The amount of the alleged "overpayment" is unclear. Aetna alleges that Smithson has not provided information regarding the amount of benefits received from these collateral sources. [Record No. 11, p. 14 ¶6]

Defendants UPS[3] and Aetna removed the action to this Court on October 24, 2013, based on federal question jurisdiction under ERISA. [Record No. 1] Aetna counterclaimed, alleging that Smithson was overpaid long-term disability benefits under the Policy from September 9, 2010, to September 19, 2012, because of his receipt of other disability benefits.[4] [Record No. 11] Aetna seeks "reimbursement, restitution, constructive trust, and/or equitable liens to recover the amount of the overpayment, as well as any offsets against any future benefits, if any, and/or any other appropriate equitable and/or legal relief" until Smithson satisfies the overpayment amount. [Record No. 11, p. 14]

**II.**

A federal court must have subject matter jurisdiction over every claim it hears because its jurisdiction cannot be forfeited or waived. U.S. Const. art. III § 2; *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Federal courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from a party. *Id.* at 514. If a federal court concludes that it lacks subject matter jurisdiction, it must dismiss the complaint in its entirety. *Id.*

Further, when evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when

---

3  Smithson dismissed his claims against UPS on October 31, 2013. [Record Nos. 8, 9]

4  The parties agree that ERISA also applies to Aetna's counterclaim. [*See* Record No. 12-1, p. 3.]

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

### III.

### A. Subject Matter Jurisdiction — ERISA

Under the civil enforcement section of ERISA, the fiduciary of an employee welfare benefit plan may bring a civil action: "(A) to enjoin any act or practice which violates any provision of the subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3); *see* 29 U.S.C. § 1002(21)(A) (defining "fiduciary"). "[T]o invoke the authority to sue under § 1132(a)(3)(B), a fiduciary must be seeking a category of relief that would have typically been available in equity and not simply an award of compensatory damages." *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 44 (6th Cir. 2007).

Smithson contends that the Court lacks subject matter jurisdiction under ERISA because Aetna is requesting legal remedies rather than equitable relief. He also argues that Aetna's counterclaim fails to identify a specific fund from which it seeks reimbursement, prohibiting Aetna from requesting relief under ERISA. [Record No. 12-1, p. 11] Smithson relies on *Great-*

*West Life & Annuity Insurance Company v. Knudson*, 534 U.S. 204 (2002), in support of his proposition that the counterclaim is legal in nature and improper under ERISA. In making this argument, Smithson mischaracterizes *Knudson* and ignores subsequent caselaw including authority from this Court interpreting § 1132(a)(3)(B). *See Unum Life Ins. Co. of Am. v. Miller*, No. 2:11-129-DCR, 2012 U.S. Dist. LEXIS 105579, at *5-6 (E.D. Ky. July 30, 2012).

"Whether [reimbursement] is legal or equitable depends on the basis for. . . [the] claim and the nature of the underlying remedies sought." *Knudson*, 534 U.S. at 213. In *Knudson*, the Supreme Court found that, because the fiduciary was seeking reimbursement of funds that were not in Knudson's possession, it was seeking "in essence, to impose personal liability on [Knudson] for a contractual obligation to pay money — relief that was not typically available in equity." *Id.* at 214. The Supreme Court clarified this holding in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), explaining that as long as the plan fiduciary seeks "its recovery through a constructive trust of equitable lien on a specifically identified fund, not from the [beneficiaries'] assets generally," the claim is equitable in nature. *Id.* at 363. In applying that principle, the *Sereboff* Court found that the "specifically identified fund" was the "recover[y] from a third party (whether by lawsuit, settlement or otherwise)" and that the "particular share of that fund to which [the fiduciary] was entitled was the portion of the total recovery which is due . . . . for benefits paid." *Id.* at 364 (internal quotation marks omitted).

In addressing the impact of *Sereboff*, the Sixth Circuit explained that "strict tracing of funds is not required." *Gilchrest,* 255 F. App'x at 45. And the Sixth Circuit subsequently upheld a district court's determination that the employee welfare benefits plan at issue was

-5-

entitled to reimbursement for "overpayments made due to [the beneficiary's] retroactive receipt of Social Security benefits." *Hall v. Liberty Life Assur. Co. of Boston*, 595 F.3d 270, 274 (6th Cir. 2010). Therefore, to seek equitable relief for the reimbursement of an overpayment of benefits, the Plan fiduciary must identify a particular fund, distinct from an insured's general assets, and the portion of that fund to which the plan is entitled. *See Hall*, 595 F.3d at 274-75 (citing *Sereboff*, 547 U.S. at 363).

Here, the Policy states that Smithson's long-term disability benefits would be reduced by the amount of his Social Security benefits, workers' compensation benefits or settlement, and disability pension benefits received. [Record No. 18-2, p. 83] It further states that the Plan is entitled to repayment of any overpayment made to Smithson due to his receipt of these other benefits. [*Id.*, p. 84] Aetna alleges in its counterclaim that Smithson was overpaid long-term disability benefits because he received benefits from other sources. [Record No. 11, p. 14] As in *Gilchrest*, Aetna is seeking to recover from a specific fund; that is, the overpayments it made as a result of Smithson's award of Social Security benefits, workers' compensation settlement, and disability pension benefits. *See Gilchrest*, 255 F. App'x at 45 (holding that "overpayments due to the receipt of Social Security benefits" represent a specifically identifiable fund in compliance with *Sereboff*); *see also Pitts v. Prudential Ins. Co. Of Am.*, 534 F. Supp. 2d 779, 791 (S.D. Ohio 2008) (Where the plan "contained a provision asserting the right to recover from the overpayment of benefits, including overpayment resulting from the receipt of [Social Security] benefits," the plan identified a specifically-identifiable fund.). And Aetna seeks a particular share of that fund — the amount of the overpayments. *See Hall*, 595 F.3d at 274-75

Smithson argues that the Court should follow non-binding decisions from other circuits that run contrary to the Sixth Circuit's interpretation of *Sereboff*. *See, e.g., Bilyeu v. Morgan Stanley Long Term Disability Plan,* 683 F.3d 1083, 1096-97 (9th Cir. 2012); *Herman v. Met. Life Ins. Co.*, 689 F. Supp. 2d 1316 (M.D. Fla. 2010); *Epolito v. Prudential Ins. Co. of Am.*, 737 F. Supp. 2d 1364 (M.D. Fla. 2010); *Reichert v. Liberty Life Assur. Co. of Boston*, 2007 WL 433321 (D.N.J. Feb. 5, 2007). This argument is not persuasive. The Sixth Circuit has addressed the issue before this Court, and found that *Sereboff* requires only that the Plan identify a particular fund, and that overpayments due to the receipt of other income benefits represent a specifically identifiable fund in compliance with *Sereboff*. *Gilchrest,* 255 F. App'x at 45. Moreover, this Court has found *Gilchrest* to be controlling in similar circumstances. *See Unum Life Ins. Co. of Am. v. Miller*, 2012 U.S. Dist. LEXIS 105579, at *14.

In summary, Aetna is entitled to assert the counterclaim under 29 U.S.C. § 1132(a)(3)(B), and the Court has subject matter jurisdiction over this ERISA action. In addition, for the reasons stated above, Aetna has pleaded a plausible claim asserting an entitlement to relief due to the alleged overpayments. Accordingly, the Court will not dismiss Aetna's counterclaim for failure to state a claim or for lack of subject matter jurisdiction.

**B.**    **Social Security Act**

Smithson also contends that Aetna's counterclaim should be dismissed because the Social Security Act's anti-assignment provision acts as a bar to recovery of Social Security benefits. *See* 42 U.S.C. § 407.[5] He relies heavily on an out-of-circuit district court decision, *Mote v. Aetna*

---

5    Section 407 provides that "[t]he right of any person to any future payment [of Social Security Benefits] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable

*Life Insurance Company*, 435 F. Supp. 2d 827 (N.D. Ill. 2006), which held that Social Security funds "are taken out of reach" by § 407(a).[6] However, as noted by Aetna, courts within this Circuit have consistently permitted reimbursement of overpaid long-term disability benefits where the relief sought is the amount of the overpayment, not the garnishment or attachment of Social Security benefits. [Record No. 18, p. 13]; *see also Hall*, 595 F.3d at 274 (Section 407 does not prevent court from placing an equitable lien that is limited to a specifically identifiable fund with the beneficiary's assets); *Wooden v. Alcoa, Inc.*, Case No. 3:11 CV 525, 2012 WL 274764, at *10-11 (N.D. Ohio, Jan. 31, 2012) (Section 407 only prevents a district court from imposing a lien on future Social Security benefits, but does not prevent a plan's right to recover overpaid benefits).

As noted above, *Hall* held that courts are not permitted under 42 U.S.C. § 407(a) to place a lien directly on the future Social Security benefits themselves. Smithson is correct that this would be improper because Aetna has no claim to his "future Social Security benefits prior to the point at which they are in [his] possession." *Hall*, 595 F.3d at 275. But Aetna's counterclaim seeks only reimbursement of the overpayments and "any *offsets* against any future benefits" received by Smithson. [Record No. 11, p. 14 (emphasis added)] Thus, unlike *Hall* and *Knudson*, Aetna is not seeking reimbursement against any future settlements, regardless of their

---

or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." 42 U.S.C. 407(a).

6   Smithson relies on other non-binding cases such as *Herman v. Metropolitan Life Insurance Company*, 689 F. Supp. 2d 1316 (M.D. Fla. 2010), for the proposition that Section 407 prohibits a claim for overpayment of social security benefits. But *Herman* is distinguishable. There, the plaintiff provided a declaration that the only funds she would have to satisfy the judgment would be her monthly social security disability checks. *Herman*, 689 F. Supp. 2d at 1318.

source. Instead, it seeks money already in Smithson's possession. Accordingly, dismissal of the counterclaim is not warranted.

### C. Kentucky Workers' Compensation Act

Smithson next argues that the Kentucky Workers' Compensation Act bars recovery of any workers' compensation benefits and that ERISA bars recovery of pension disability benefits. [Record No. 12-1, p. 11] He argues that KRS § 342.180, which prohibits workers' compensation benefits from being assigned, should apply. [*Id.*, pp. 11-12] He similarly argues that ERISA's anti-alienation provision prohibits Aetna from garnishing his pension. [*Id.*, p. 12] In response, Aetna contends that the Kentucky Workers' Compensation Act is inapplicable because it is not seeking an assignment of the workers' compensation settlement. Likewise, it is not seeking to garnish or attach the disability pension benefits awarded to Smithson which is prohibited under ERISA. [Record No. 18, p. 14] From the plain language of the counterclaim and policy, Aetna is seeking recovery of any *overpayment* that occurred as a result of any receipt of workers' compensation settlement or pension award, not an assignment, attachment, or garnishment of those benefits.[7] Smithson's arguments to the contrary are unpersuasive.

### D. Motion to Strike

Finally, Smithson moves the Court to strike Aetna's request for "legal relief" and the phrase "Counterclaimant seeks the full amount of the overpayment in the amount to be

---

7     The parties disagree on the extent to which ERISA would preempt the Kentucky Workers' Compensation Act in this context. [Record No. 18, p. 13 n.5] It is unnecessary for the Court to decide this preemption issue because Aetna is not seeking an assignment of Smithson's workers' compensation benefits. However, the Court notes that the Kentucky Workers' Compensation Act is likely preempted. *See Longaberger Co. v. Kolt,* 586 F.3d 459, 472 (6th Cir. 2009) (Noting that ERISA broadly preempts all state laws as they relate to any employee benefit plan.).

determined upon receipt of Other Income Benefits" under Rule 12(f) of the Federal Rules of Civil Procedure. [Record No. 12-1, pp. 13-14] Under this rule, the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, motions to strike are not favored and normally will be granted only where it would remove unnecessary clutter from the pleadings or expedite resolution of the case. *See Ardisam, Inc. v. Ameristep, Inc.*, 302 F. Supp. 2d 991, 999 (7th Cir. 2004). As stated above, Aetna is limited to seeking equitable – not legal – remedies which are appropriate under ERISA. *See* 29 U.S.C. § 1132(a)(3). Accordingly, the motion to strike is unnecessary and will be denied.

## IV.

For the reasons set forth above , it is hereby

**ORDERED** that Plaintiff Eric Smithson's Motions to Dismiss Counterclaim for failure to state a claim and/or lack of subject matter jurisdiction and Alternative Motion to Strike Portions of Counterclaim [Record No. 12] are **DENIED**.

This 30th day of January, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge